IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VICTOR MANUEL RIVERA,** : | |
| Plaintiff, : | |
| v. : | Civ. No.  16-1493 |
| : | |
| **JOHN C. THOMAS, et al.,** : | |
| Defendants. : | |

**Diamond, J.**                                                                                                       **March 27, 2017**

**M E M O R A N D U M**

After severing part of his finger during a prison softball game, inmate Victor Manuel Rivera alleges that the Pennsylvania Department of Corrections and several prison officials violated his constitutional rights and acted negligently in tethering the softball bat that caused his injury.  (2d Am. Compl., Doc. No. 20.)  Defendants urge that because Plaintiff has failed to state a constitutional claim, I should dismiss for lack of subject-matter jurisdiction and transfer his negligence claims to state court.  (See Defs.' Mot. to Dismiss, Doc. No. 23.)  I agree.

**I.     BACKGROUND**

I have accepted as true Plaintiff's factual allegations and disregarded mere conclusions. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (conclusory allegations or mere elements recitation properly not credited on motion to dismiss); Petruska v. Gannon Univ., 462 F.3d 294, 299 n.1 (3d Cir. 2006) ("[T]he standard is the same when considering a facial attack under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6)."); see, e.g., Tucker v. Bernzomatic, No. 09-5881, 2010 WL 1838704, at *4 (E.D. Pa. May 4, 2010) (to survive motion to dismiss, "[m]ore is required than an unadorned assertion that defendants 'knew' [something] was unsafe").  I have also considered the DOC Safety Memorandum Plaintiff refers to in his Second Amended Complaint (and Defendants attached to their Motion).  (Safety Mem., Ex. 1,

Defs.' Mot. to Dismiss; see 2d Am. Compl. ¶¶ 11-12, 20, 84); see Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004) (I may consider undisputedly authentic documents without converting a dismissal motion into one for summary judgment).

### A. Factual Allegations

Plaintiff is incarcerated at the State Correctional Institution of Chester in Delaware County, Pennsylvania. (2d Am. Compl. ¶ 3.) The DOC owns, operates, and controls the Prison. (Id. ¶¶ 9-10.) As Superintendent, Defendant John C. Thomas is responsible for the Prison's operations and the inmates' welfare. (Id. ¶ 4.) Defendant Petterece Jenkins, the Activities Manager, is responsible for equipment and safety when the inmates participate in activity programs. (Id. ¶ 5.) Reporting to Jenkins is Defendant Bobby Zankel, the Correctional Activities Supervisor, who manages the Prison's softball program. (Id. ¶ 6.) Defendant Peter Abhulimen, the Facility Maintenance Manager, maintains Prison equipment. (Id. ¶ 7.) Defendant Paul Humphrey is the Prison's Maintenance Welder. (Id. ¶ 8.) As alleged, these Individual Defendants collectively are responsible for the safety of all welded equipment. (Id.)

On June 26, 2013, the DOC issued a Safety Memorandum instructing its correctional facilities to tether and secure all bats to the baseball fields' backstops. (Id. ¶ 11; see Safety Mem., Ex. 1, Defs.' Mot. to Dismiss.) The Memorandum included a diagram illustrating an appropriate way to tether the bats. (2d Am. Compl. ¶ 12.) After Thomas and Jenkins received the Memorandum, Jenkins prepared a Work Order that included the diagram. (Id.) Jenkins gave the Work Order to Abhulimen and instructed him to construct the tether as depicted in the diagram. (Id. ¶ 14.) Abhulimen put Humphrey in charge of fabricating and installing the tether. (Id. ¶ 15.) Humphrey, in turn, assigned the project to an inmate who worked in the welding shop. (Id. ¶ 16.)

The fabrication instructions in the Work Order and those Humphrey provided to the inmate were not the same. (Id. ¶ 17.) The Work Order called for the tether to be attached to the backstop, but Humphrey instructed the inmate instead to fasten the tether to a locked, metal apparatus in the ground several feet behind home plate. (Id. ¶ 20.) This method of anchoring the tether was the only difference between the Work Order specifications and the tether as actually installed. (See id.) The Work Order called for the tether to wrap around the handle of the bat and be secured by two "C-clamps." (Id. ¶ 19.)

The tether immediately created difficulties: inmates playing softball became entangled in it. (Id. ¶ 22.) Although Plaintiff and other inmates informed SCI-Chester staff that the tether was not "safe," they never specified a dangerous condition, referring only to inmates becoming tangled in the tether. (See, e.g., id. ¶¶ 21, 22, 61.) Plaintiff further alleges that Zankel had seen several inmates become entangled and asked Jenkins to order a replacement tether. (Id. ¶¶ 22, 24.) Jenkins and Abhulimen knew about the entanglement complaints. (Id. ¶¶ 23, 56-57, 61.) Nowhere does Plaintiff allege that anyone knew of any hazard created by the C-clamps or the possibility that the clamps might catch a batter's finger. Nor does Plaintiff allege that the manner by which the tether was anchored somehow made the C-clamps more dangerous. Although the tether remained unchanged, inmates continued to use the bat.

On July 9, 2014—over a year after the tether's installation—Plaintiff was batting in a softball game and caught his right pinky finger in a gap between the bat and a C-clamp. (Id. ¶¶ 26-29.) To stop the bleeding, Plaintiff applied pressure to his finger; he then realized that the finger was severed from the second joint. (Id. ¶¶ 30-31.) Plaintiff recovered the fingertip and was immediately was treated by Prison medical staff and taken to Crozer Chester Medical Center,

3

where he was kept waiting for almost 3 hours. (Id. ¶¶ 33-39.) Once the doctors finally saw Plaintiff, they were unable to reattach the fingertip. (Id. ¶¶ 39-42.)

### B. Procedural History

After exhausting his remedies through the Prison's grievance system, on April 6, 2016, Plaintiff filed a *pro se* Complaint in this Court. (Id. ¶¶ 41-49; see *Pro Se* Compl., Doc. No. 3.) At Plaintiff's request, I referred his case to the *Pro Se* Prisoner Panel for appointment of counsel. (Doc. Nos. 1, 6.) On July 28, 2016, I appointed lawyers from the Morgan Lewis firm. (Doc. No. 9.)

On August 29, 2016, Plaintiff filed a counseled Amended Complaint. (Doc. No. 12.) Both the Individual Defendants and the DOC moved to dismiss for lack of subject-matter jurisdiction and for failure to state a § 1983 claim. (Doc. Nos. 13, 16); Fed. R. Civ. P. 12(b)(1), (6). In his consolidated Response, Plaintiff stated "[i]f the Court is inclined to grant Individual Defendants' motion to dismiss Plaintiff's § 1983 claim, Plaintiff requests leave to amend his Complaint to assert additional facts in support of this claim, in particular, to demonstrate each Individual Defendant's personal involvement in the conditions that resulted in Mr. Rivera's injury." (Doc. No. 17 at 15.) With my permission, Plaintiff then filed the instant counseled Second Amended Complaint. (Doc. Nos. 18-20.)

Plaintiff alleges that: Jenkins, Zankel, Abhulimen, and Humphrey violated the Eighth Amendment (Count I); Jenkins, Zankel, Abhulimen, and Humphrey violated the Fourteenth Amendment (Count II); all Individual Defendants were negligent (Count III); and the DOC was also negligent (Count IV). In addition to compensatory and punitive damages, Plaintiff seeks a "mandatory injunction requiring Defendants to alter the tethering apparatus . . . to comply with the

original Work Order diagram to ensure the safety of Plaintiff and all SCI-Chester inmates moving forward." (2d Am. Compl. at 13 (Prayer for Relief).)

All Defendants have again moved to dismiss the Second Amended Complaint in its entirety for want of jurisdiction and for failure to state a claim. (Defs.' Mot. to Dismiss, Doc. No. 23); see Fed. R. Civ. P. 12(b)(1), (6). The matter has been fully briefed. (See Pl.'s Resp., Doc. No. 26; Defs.' Reply, Doc. No. 27.)

## II.  LEGAL STANDARDS

### A.  Lack of Subject-Matter Jurisdiction

In opposing a Rule 12(b)(1) motion to dismiss, the plaintiff must show that the court has jurisdiction. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991); Johnsrud v. Carter, 620 F.2d 29, 32 (3d Cir. 1980); Fed. R. Civ. P. 12(b)(1).

"State governments and their subsidiary units are immune from suit in federal court under the Eleventh Amendment." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 253 (3d Cir. 2010); see U.S. Const., amend. XI; see also Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 693 n.2 (3d Cir. 1996) (motion to dismiss based on Eleventh Amendment immunity is properly brought under Rule 12(b)(1)). "The Supreme Court extended the Eleventh Amendment's reach to suits by in-state plaintiffs, thus barring all suits against non-consenting States in federal court." Lombardo v. Pa. Dep't of Pub. Welfare, 540 F.3d 190, 194 (3d Cir. 2008). State officials acting in their official capacities receive the same protection from suit as the governmental entity employing them. See Hafer v. Melo, 502 U.S. 21, 25 (1991). Eleventh Amendment immunity extends to state law claims brought in federal court pursuant to supplemental jurisdiction. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984).

Although Pennsylvania has waived immunity for certain negligence claims brought in state court, it has explicitly retained its Eleventh Amendment immunity from suit in federal court. Compare 42 Pa. C.S. § 8522(b) (nine exceptions to Commonwealth's immunity from suit for negligence claims), with id. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.").

### B.     Failure to State a Claim

A defendant moving under Rule 12(b)(6) must show that the plaintiff has failed to state a claim. See Kehr Packages, Inc., 926 F.2d at 1409. To survive a motion to dismiss, a complaint must provide more than labels, conclusions, or formulaic recitations of a claim's elements: it must "state the grounds of entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). Each claim must be plausible. See Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556)). The plaintiff must thus demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678.

*Eighth Amendment*

This provision protects individuals from "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010). Accordingly, prison officials must, *inter alia*, "take reasonable measures to guarantee the safety of inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). To state an Eighth Amendment claim, a plaintiff must show that the defendants were deliberately indifferent to a substantial risk of serious harm. See id. at 828; Betts, 621 F.3d at 258 ("Life is fraught with risk of serious harm," so an Eighth Amendment violation may be predicated only on exposure to a "substantial" risk of harm).

"In the Eighth Amendment context, deliberate indifference is a subjective standard of liability consistent with recklessness as that term is defined in criminal law." Parkell v. Danberg, 833 F.3d 313, 335 (3d Cir. 2016) (internal quotation marks omitted). "[A] defendant prison official must both know of and disregard an excessive risk to inmate health or safety." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2011) (internal quotation marks omitted). A plaintiff may establish deliberate indifference by showing that the risk of harm was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past" so that they "must have known" about the risk. Farmer, 511 U.S. at 842-43. "[A] defendant can rebut a prima facie demonstration of deliberate indifference . . . by establishing that he did not have the requisite level of knowledge or awareness of the risk." Beers-Capitol, 256 F.3d at 133.

To establish that there was a substantial risk of harm, a plaintiff must show that: 1) the injury he sustained was serious; 2) there was a sufficient likelihood that his injury would result from the conditions that caused it; and 3) the risks associated with the existing conditions violate contemporary standards of decency. See Betts, 621 F.3d at 257. In cases where a sufficient likelihood of serious harm has been found, "prisoners were subjected to horrible conditions of filth, undernourishment, exposure, and the like." Batton v. State Gov't of N.C., Exec. Branch, 501 F. Supp. 1173, 1179 (E.D.N.C. Nov. 26, 1980). In deciding whether a risk violates contemporary standards of decency, I must determine whether the risk is so grave that society refuses to tolerate it. See Helling v. McKinney, 509 U.S. 25, 36 (1993); Betts, 621 F.3d at 258; see, e.g., Wilkins, 559 U.S. at 37 (2010) (prison official sadistically and maliciously punching, kicking, and choking prisoner); Farmer, 511 U.S. at 833 (allowing prisoner to be raped and beaten); Estelle v. Gamble, 429 U.S. 97, 104 (refusing to treat a prisoner's serious medical needs).

*Substantive Due Process*

"A violation of the Fourteenth Amendment right to substantive due process may be shown by a government actor's conduct that 'shocks the conscience.'" Robinson v. Hicks, 450 F. App'x 168, 174-75 (3d Cir. 2011) (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998)). "Negligent conduct falls beneath this constitutional due process threshold." Id. at 174 (quoting Lewis, 523 U.S. at 846-47).

"Noting its 'reluctan[ce] to expand the concept of substantive due process,' the Supreme Court has established the 'more-specific-provision rule.'" Betts, 621 F.3d at 260 (quoting Lewis, 523 U.S. at 843-44). I may not address a substantive due process claim if another Constitutional provision provides an explicit source of protection against the misconduct alleged. See United States v. Lanier, 520 U.S. 259, 272 n.7 (1997); Graham v. Connor, 490 U.S. 386, 395 (1989); see also Betts, 621 F.3d at 256-60.

*Qualified Immunity*

This doctrine provides an affirmative defense that "gives government officials breathing room to make reasonable but mistaken judgments, and 'protects all but the plainly incompetent or those who knowingly violated the law.'" Stanton v. Sims, 134 S. Ct. 3, 5 (2013) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011)). Government officials are protected "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). I must consider whether: 1) the facts alleged make out a constitutional violation; and 2) the right at issue was clearly established at the time of the alleged misconduct. See Pearson, 555 U.S. at 236. A right is clearly established if it would be clear to a reasonable officer that his challenged conduct was unlawful. See Reedy v.

Evanson, 615 F.3d 197, 224 (3d Cir. 2010).  "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."  Pearson, 555 U.S. at 244.  If a plaintiff fails to make out a prima facie constitutional claim, I need not determine whether a defendant is entitled to qualified immunity.  See Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 n.2 (3d Cir. 2006) ("Because we conclude the Kauchers have not alleged a constitutional violation, our [qualified immunity] inquiry proceeds no further.").

### III. DISCUSSION

#### A. Subject-Matter Jurisdiction

Defendants argue that because they enjoy Eleventh Amendment immunity, this Court is without jurisdiction to hear Plaintiff's negligence claims.  (Doc. No. 23 at 17-19); see U.S. Const. amend. XI; 42 Pa. C.S. § 8521(b) (retaining Eleventh Amendment immunity in federal civil actions); Halderman, 465 U.S. at 121 (extends to state law claims brought in federal court); Hafer, 502 U.S. at 25 (individual state officials acting in their official capacity are also entitled to Eleventh Amendment immunity).  I agree.  Indeed, Plaintiff concedes that the Commonwealth has expressly retained its Eleventh Amendment immunity with respect to claims brought in federal court.  (Pl.'s Resp. at 15-16.)  Because Defendants enjoy immunity in this Court, I will allow Plaintiff to transfer his negligence claims to the appropriate state court.  See 42 Pa. C.S. § 5103(b) (permitting such transfer); (Pl.'s Resp. at 16 (asking me to permit transfer if I were inclined to dismiss negligence claims for want of jurisdiction).)

B.     **Failure to State a Claim**

*Eighth Amendment*

Plaintiff has failed to allege plausibly that Defendants Jenkins, Zankel, Abhulimen, and Humphrey violated Plaintiff's right to be free from "unnecessary and wanton infliction of pain." Whitley, 475 U.S. at 319.

First, Plaintiff has not made out that these Defendants knew of and disregarded an excessive risk to inmate safety and thus acted with deliberate indifference. Plaintiff alleges only that Jenkins, Zankel, Abhulimen, and Humphrey "knew that the tethering mechanism was not prepared according to the original Work Order specifications," and that the risk of becoming entangled was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." Farmer, 511 U.S. at 842-43; (see 2d Am. Compl. ¶ 58.) Plaintiff does *not* allege that anyone knew that the tether posed a risk to a batter's hands or posed an actual threat to inmate safety.

Plaintiff argues that because the tether as installed varied from the Work Order specifications, this necessarily created a substantial risk of harm. (2d Am. Compl. ¶ 58; Pl.'s Resp. at 6-7.) This is incorrect. See Abjul-Hadi v. Dittsworth, No. 11-1263, 2012 WL 3260361, at *4 (W.D. Pa. Aug. 8, 2012) ("[S]imply because the state mandates that certain procedures be complied with does not mean thereby that those procedures are of constitutional significance."). Indeed, as alleged, the only difference between the tether as ordered and the tether as built was the way it was anchored. (2d Am. Compl. ¶ 20.) The C-clamp "hazard" would have been the same even if the Work Order specifications had been followed. Accordingly, Plaintiff has alleged only that Defendants Jenkins, Zankel, Abhulimen, and Humphrey knew that prisoners had become

10

tangled in the tether, *not* that these Defendants were "deliberately indifferent to a substantial risk of serious harm." See Farmer, 511 U.S. at 828; Betts, 621 F.3d at 256.

The Seventh Circuit's decision in *Christopher v. Buss* is especially instructive. See 384 F.3d 879, 880-83 (7th Cir. 2004). Inmate Christopher injured his eye during a state prison softball game when the ball bounced off of a "protrusive lip" on the field that the prison had failed to remove. Id. at 880. As alleged, the prison knew about the defect because another inmate had been injured in precisely the same way. See id. The Seventh Circuit upheld the district court's dismissal for failure to state an Eighth Amendment claim against the prisoner and various prison personnel:

> Even if the defendants knew about the field condition . . . and purposefully ignored it, Christopher would not be entitled to relief. A "protrusive lip" on a softball field, even if hazardous when a ball hits it in a certain way, does not amount to a condition objectively serious enough to implicate the Eighth Amendment. Such "lips" where the infield joins the outfield doubtless exist on subpar fields across the country. To say that "exposure" to such a field could violate the Eighth Amendment would be to imply that prison officials violate the Eighth Amendment by letting inmates play sports at all, because the risk of injury, even serious injury, is inherent. Cf. James v. Hillerich & Bradsby Co., 299 S.W.2d 92, 94 (Ky. 1957) (negligence case noting "ordinary risks of personal injury involved in a baseball or softball game").

Id. at 882. Plaintiff's Eighth Amendment claim fails for the same reasons. Tethering a bat with C-clamps—which prisoners used for a year without incident—"does not amount to a condition objectively serious enough to implicate the Eighth Amendment." Id.

Moreover, although Plaintiff's injury was serious, he has not adequately alleged that there was a likelihood that the tethered bat would sever his finger. See Betts, 621 F.3d at 257; Christopher, 384 F.3d at 880-82. Once again, the bat had been in use for a year before Plaintiff sustained his injury. (2d Am. Compl. ¶¶ 11, 21, 24-26.) Using C-clamps did not subject SCI-Chester prisoners to "horrible conditions of filth, undernourishment, exposure, and the like." Batton, 501 F. Supp. at 1179; cf. Hope v. Pelzer, 536 U.S. 730, 738 (2002) (handcuffing shirtless prisoner to hitching post in hot sun for seven hours without allowing bathroom breaks); Chavarriga

11

v. N.J. Dep't of Corr., 806 F.3d 210, 228 (3d Cir. 2015) (denying prisoner potable water for two days); Villegas v. Metropolitan Gov't of Nashville, 709 F.3d 563, 574 (6th Cir. 2013) (shackling pregnant detainees while in labor); McElligot v. Foley, 182 F.3d 1248, 1256-57 (11th Cir. 1999) (prison doctors ignoring prisoner's severe abdominal pain, physical deterioration, and weight loss). Indeed, the injunctive relief Plaintiff seeks—installation of a tether consistent with the Work Order—would leave the C-clamps in place. (See 2d Am. Compl. at 13 (Prayer for Relief).)

Similarly, using C-clamps to tether a bat cannot be said to violate contemporary standards of decency. See Betts, 621 F.3d at 258 (playing tackle football without protective equipment does not violate contemporary standards of decency); James, 299 S.W.2d at 94 ("[T]he ordinary risks of personal injury involved in a baseball or softball game . . . are such that a defective bat cannot be said to materially increase the risk, or . . . to create an unreasonable risk.") (internal quotation marks omitted).

In sum, I will dismiss Plaintiff's § 1983 claim against Defendants Jenkins, Zankel, Abhulimen, and Humphrey because he has failed to state a plausible Eighth Amendment claim.

*Substantive Due Process*

Plaintiff bases his Eighth and Fourteenth Amendment claims on "his conditions of confinement and an alleged failure by Defendants to ensure his safety." Betts, 621 F.3d at 260. The Eighth Amendment, however, "provides an explicit textual source of constitutional protection" against the wrongdoing alleged here. Lanier, 520 U.S. at 272 n.7; Graham, 490 U.S. at 395. Plaintiff's substantive due process claim is thus barred by the more-specific-provision rule. Betts, 621 F.3d at 259-60 (the rule applies even if the plaintiff has failed to state an Eighth Amendment claim).

*Qualified Immunity*

Because I ruled that the facts as alleged do not make out a constitutional violation, it would appear that Defendants are entitled to qualified immunity.  See Pearson, 555 U.S. at 236.  In light of my Eighth Amendment ruling, however, I will not address the qualified immunity argument further.  See Kaucher, 455 F.3d at 423 n.2.

## IV.  CONCLUSION

Plaintiff has sought to transform a negligence claim into one of constitutional dimension. Courts have repeatedly held, however, that such "constitutional" claims are not cognizable.  See Whitley, 475 U.S. at 322 (negligence is insufficient to sustain an Eighth Amendment claim); Parkell, 833 F.3d at 337 (same); Abjul-Hadi, 2012 WL 3260361, at *4 (same); see also Christopher, 384 F.3d at 880-83.  Moreover, I am without jurisdiction to hear Plaintiff's remaining claims, which are barred by Eleventh Amendment Immunity.  Accordingly, I will dismiss Plaintiff's Second Amended Complaint and allow him to transfer his negligence claims to state court.

An appropriate Order follows.

*/s/ Paul S. Diamond*

_____

Paul S. Diamond, J.